## STEVENSON v. ANTRIM IRON CO.

1. WORKMEN'S COMPENSATION—EYE INJURY—WOODCHOPPERS—CONTRACT OF EMPLOYMENT—EVIDENCE.

   In woodchopper's proceeding to recover compensation for injury sustained while working for defendant when piece of steel wedge struck right eye and necessitated its removal, written contract not shown to have been signed by, nor ever presented to, plaintiff and which contained terms which plaintiff testified were "about the same" as his own oral contract *held*, insufficient to prove existence of relation of independent contractor and without probative value since one contracts with regard to certain terms and not on terms "about the same" as that of some other contract.

2. MASTER AND SERVANT—ORAL CONTRACTS—EXISTENCE OF RELATION—QUESTION OF FACT OR MIXED LAW AND FACT.

   Whether or not the relation of master and servant exists in a given case, under oral contract, is often a question of fact, or of mixed law and fact.

3. SAME—INDEPENDENT CONTRACTOR—RIGHT OF CONTROL.

   Indices of independent contract such as fixed price for the work to be done and specific and limited character of the work are not conclusive, the basic test being the employer's right of control of the workman extending only to the results to be accomplished by him and not to the method or means of accomplishment.

4. WORKMEN'S COMPENSATION—FINDING OF FACT BY DEPARTMENT—INDEPENDENT CONTRACTOR.

   Determination of department of labor and industry on question of fact as to whether relation of employer and employee or that of independent contractor existed is binding upon Supreme Court reviewing matter by appeal in the nature of certiorari (2 Comp. Laws 1929, § 8451).

5. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—SUPERVISION—
CONTRACTS.

Difference between an independent contractor and a mere servant
is not determined by retention of a certain kind or degree of
supervision by employer but by the contract as a whole, by its
spirit and essence, and not by the phraseology of a single
sentence or paragraph.

6. WORKMEN'S COMPENSATION—DEPARTMENT OF LABOR AND INDUSTRY
—INFERENCES.

Department of labor and industry may draw inferences from the
facts and circumstances in determining whether relation of
employer and employee or that of independent contractor
existed.

7. SAME—FINDING BY DEPARTMENT—INDEPENDENT CONTRACTOR.

In a proceeding under the workmen's compensation law in which
the department of labor and industry makes a finding that
relation of employer and employee existed, unless Supreme
Court may hold as a matter of law that the plaintiff was an
independent contractor, the finding must be affirmed.

8. MASTER AND SERVANT—INDEPENDENT CONTRACTOR—CONTROL OF
SERVANT—RIGHT TO INTERFERE.

The test as to whether the relation is that of master and servant
or independent contractor is the right to control the servant;
it is not the fact of actual interference with the control, but
the right to interfere, that distinguishes an independent con-
tractor from a servant or agent.

9. SAME—CONTROL—PAYMENT.

In determining question of fact as to whether the relation be-
tween a plaintiff and defendant is that of master and servant
or independent contractor, no specific factor of control appears
to be conclusive, but differentiation lies in the extent or degree
of control exercised as determined often from the nature of
the work or service to be performed and the manner in which
it is carried out, possibility of execution by some one not a
party to the contract, terms of payment, and direction of the
work.

10. WORKMEN'S COMPENSATION—WOODCHOPPER AS EMPLOYEE—EVI-
DENCE.

In woodchopper's proceeding to recover compensation for loss of
eye caused by flying piece of steel wedge while working under
.instructions of defendant's foreman who showed plaintiff where

work was to be done, how to cut and split the wood, for weekly payment in accordance with amount of straight wood cut and who would have been discharged if work was not done properly, finding of department of labor and industry that plaintiff was an employee because defendant had reserved the right to discharge him if his work was unsatisfactory and also retained and exercised the right of supervision of the work during its performance *held*, sustained by the evidence.

WIEST and BUSHNELL, JJ., dissenting.

Appeal from the Department of Labor and Industry. Submitted October 4, 1938. (Docket No. 13, Calendar No. 40,072.) Decided February 2, 1939.

Robert Stevenson presented his claim for compensation against Antrim Iron Company for loss of eye sustained while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed.

*Thomas J. Bresnahan* and *Daniel H. Cronin,* for plaintiff.

*Travis, Merrick & Johnson,* for defendant.

McALLISTER, J. On September 23, 1936, plaintiff, a woodchopper, suffered an injury to his right eye, necessitating its removal. The accident occurred in the course of his work, and resulted from a piece of steel breaking from a wedge and striking his eye. He made application for compensation under the workmen's compensation act (2 Comp. Laws 1929, § 8407 *et seq.* [Stat. Ann. § 17.141 *et seq.*]). The defense was that at the time of the injury plaintiff was not an employee of the defendant, but was an independent contractor. On hearing before the deputy commissioner, compensation was denied on the ground that plaintiff was an independent contractor; but on review the department found that the relation

between plaintiff and defendant was that of employee and employer, and awarded plaintiff compensation at the rate of $7 per week for a period of 100 weeks for the specific loss of his right eye.

Plaintiff testified that he came upon the premises of defendant and asked the "strip boss" for a job cutting wood. He was employed and told where he was required to cut the wood and how much was to be cut. Plaintiff further testified that he was working under the instructions of a foreman called a "strip boss," and was working where such foreman showed him to work. He also stated that he was told how to cut the wood. Defendant's foreman testified that when a man did not do his work properly, he was discharged. Plaintiff was paid according to the amount of wood he cut; the foreman would come around during the cutting and tell plaintiff not to put any crooked limbs in the piles, how long to cut it and how to split it. He was paid every Saturday night, at the time when all the employees of defendant were paid.

On the hearing, defendant introduced in evidence a printed contract form apparently used on some occasions by defendant company. It provided for the cutting of wood by contract; contained stipulations as to the contractor furnishing his own tools; and required a two-day notice of termination of the contract. It was not claimed that plaintiff had signed such contract, nor had it been presented to him before he was given the job. He was asked by the deputy commissioner:

"*Q.* But are those the same terms and conditions you were working under at the time of the accident?

"*A.* Yes, sir, about the same."

Such contract was insufficient to prove that the relation of independent contractor existed. It was

not claimed that plaintiff signed the card or was even shown it before starting his work. His answer that the terms of his work were "about the same" has no probative value. One contracts with regard to certain terms and not on terms "about the same" as that of some other contract.

"Whether or not the relation of master and servant exists in a given case, under oral contract, is often a question of fact, or of mixed law and fact." *Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385, 400 (Ann. Cas. 1918 C, 664).

"The courts have declared several factors as indices of an independent contract, among them a fixed price for the work to be done and the specific and limited character of the work, none of them, however, conclusive. The basic test is that the employer's right of control of the workman extends only to the results to be accomplished by him and not to the method or means of accomplishment.

"The work here involved is of a character which is ordinarily not the matter of an independent contract at least when the employer provides the transportation of the furniture. It is usually common labor over which the employer retains the right of full control." *Hamilton* v. *J. Kelsey McClure, Inc.*, 278 Mich. 307.

In *Salmi* v. *New Era Life Association*, 276 Mich. 457, the court after discussing the contradictory claims and conflicting evidence of the parties as to the nature of the employment, said:

"Notwithstanding such testimony, we still find under this record that a question of fact was presented for the determination of the department of labor and industry as to whether plaintiff at the particular time and place was acting in the capacity of an employee or that of an independent contractor or representative of defendant company. Under such a

record on review by certiorari the determination of the department of labor and industry is binding upon this court.*

" 'The difference between an independent contractor and a mere servant is not determined solely by the retention of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole, by its spirit and essence, and not by the phraseology of a single sentence or paragraph.' *Foster* v. *City of Chicago* (syllabus), 96 Ill. App. 4.

" 'Department of labor and industry may draw inferences from the facts and circumstances in determining whether relation of employer and employee or that of independent contractor existed.' *Glenn* v. *McDonald Dairy Co.* (syllabus), 270 Mich. 346.''

In *Dennis* v. *Sinclair Lumber & Fuel Co.*, 242 Mich. 89, it was said:

"An apt case illustrative of the common-law distinction between an independent contractor and an employee, under circumstances similar to those in the case at bar, is *Waters* v. *Pioneer Fuel Co.*, 52 Minn. 474 (55 N. W. 52, 38 Am. St. Rep. 564). In that case the owner of a team and running gear of a wagon applied for work and had work for about three months delivering coal, was paid 35 cents per ton for delivering and received his pay each week. He was not sure of business every day, could quit at will, loaded the coal and delivered as directed, collected the money for it, procured receipts showing delivery, and returned the money and receipts to the company. In an action by a third person against the company to recover for injuries occasioned by his negligence, held that he was an employee and not an independent contractor.''

In *Bradley* v. *Republic Creosoting Co.*, 281 Mich. 177, the court was called upon to pass upon the question of whether in a case in which the facts included indicia of the relation of master and servant, as well as that of independent contractor, the determination was a question of fact or law:

---

* See 2 Comp. Laws 1929, § 8451 (Stat. Ann. § 17.186).—REPORTER.

"The defendant had logs at different farms. It engaged plaintiff to haul them to its plant at a price of $6 per 1,000 feet for a 20-to-30-mile haul, $7 for a 30-to-40-mile haul, and $8 for a haul of over 40 miles. Plaintiff furnished a truck and hired a helper whom he paid. After he was injured, his helper continued the work and plaintiff received the agreed payment from defendant therefor.

"These are incidents of an independent contract but are not conclusive. *Begovac* v. *Northwestern Cooperage & Lumber Co.,* 264 Mich. 508; *Eber* v. *Bauer,* 252 Mich. 571; *Dennis* v. *Sinclair Lumber & Fuel Co.,* 242 Mich. 89; *Brower* v. *W. H. Isgrigg & Son,* 216 Mich. 365; *Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385 (Ann. Cas. 1918 C, 664).

"On the other hand, defendant filed report of the accident as compensable and described plaintiff therein as employee. Plaintiff was not engaged to haul a specified quantity of logs; nor was a time fixed for performance of the work. He could have quit the job or could have been discharged at any time. These are indices of an employment.

"The other testimony presents no definite and controlling incident of either relationship. In a general way, plaintiff's instructions were to finish hauling the logs from one farm and then go to another, and to haul as rapidly as possible. Defendant engaged others to help in loading the logs and sometimes in unloading them. It told plaintiff where to get logs and, on delivery, where to put them in the yard. The directions were not inconsistent with employment or independent contract.

"Under the testimony, it cannot be held as a matter of law that plaintiff was an independent contractor and the award must be affirmed."

In *Warner* v. *Fullerton-Powell Hardwood Lumber Co.,* 231 Mich. 328, in a case involving the question now before us, it was held that plaintiff was an employee rather than an independent contractor:

"The contract of the parties was oral and provided for compensation at the rate of $10 per thousand feet. Plaintiff was to use his own team and equipment, and was usually paid every Tuesday after the logs were scaled. It appears that plaintiff worked when he pleased and laid off when he pleased. He could draw a large or a small load, and select his own highway. It appears that the defendant lumber company directed where and how the logs should be unloaded and piled in the railroad yard, and directed what logs should be hauled. It also had the right to terminate plaintiff's employment at any time and to direct that no work should be done on certain days. The contract did not provide that plaintiff should haul any definite number or amount of logs, and Mr. Cochrane, who had charge of the business, testified that plaintiff had no authority to hire another man and team in his stead, or to hire an additional man and team.

"The question of determining whether plaintiff was an employee or an independent contractor is one not without difficulty, as is usual in such cases. Plaintiff, when at work, appears to have been treated very much like the other employees that were driving the company's teams, except the fact that the company did not direct the number of loads nor the size of them which should be drawn daily by him, nor did it provide that he should work every day. The manner of paying plaintiff by the thousand feet made the company rather indifferent to these details. In the essentials the company appears to have controlled. It directed what logs should be drawn, where they should be drawn to and how they should be piled. It selected its own time for scaling the logs and making payment for the hauling. There was no definite amount or number of logs to be hauled, as is usual in cases of independent contract. The question as to how long plaintiff was to work and whether he should work at all were also reserved by the company. And

it would have been no violation of the contract if plaintiff had quit at any time. It appears that plaintiff had no right to substitute another team for his own, nor to employ an additional man and team. We think there is enough in the testimony to support the conclusion of the board that plaintiff was an employee, although the case is a close one.

"Defendants are of the opinion that this case ought to be ruled by *Polka* v. *Lynch Timber Co.,* 227 Mich. 606. It is similar in that in both cases plaintiff was paid not by the day but by the amount of work he did. They differ, however, in this: In the *Polka Case* the amount of work to be performed was definite, and Polka could employ what labor he chose to assist him. He was under obligation to do a stated amount of work, and could not be legally discharged if he were doing his work according to contract. These elements were not present in the case at bar."

In *Begovac* v. *Northwestern Cooperage & Lumber Co.,* 264 Mich. 508, the court having before it a question similar to that in the instant case, said:

"Plaintiff was a piece worker, cutting logs at a stated sum per log, varying with the size of the timber. The relationship had some of the elements of an independent contractorship, such as that plaintiff was paid by the piece; that he furnished his own tools; that he engaged a partner to work with him; and that he was given a strip of timber to cut. *Kimberg* v. *Murray,* 233 Mich. 543; *Donithan* v. *Michigan Iron & Chemical Co.,* 227 Mich. 609. On the other hand, there were indices of the relationship of employer and employee from testimony that the camp boss required piece workers to begin work each day when the crew started, that the boss could discharge them before they had finished their strips, that if they wanted to quit they would be paid and let go, that they were moved from one strip to another or to general timber before they had finished the first,

that after plaintiff was hurt the foreman would not permit his partner to get a man to help him and continue the work because there were too many logs ahead, and he placed him on other day's work, and that plaintiff had been paid compensation on a former occasion when working under similar arrangement. *Conrad* v. *Cummer-Diggins Co.,* 224 Mich 414; *Dominic* v. *Faucett,* 245 Mich. 337.

"The case presented an issue of fact for the department, and its decision is final."

In *Tuttle* v. *Embury-Martin Lumber Co., supra,* plaintiff's decedent was engaged in hauling logs for defendant when he met with an accident causing his death. In his work, he furnished his own equipment consisting of a team, was paid $2 per thousand for the logs he hauled, worked when he wished to, determined the size of the loads he hauled, and was under no control while hauling, except that in loading he drove his team ahead or backed up, according to the directions of the foreman. Further, he did not live in camp under the supervision of the foreman and was not required to unload the logs as were employees of the company; and he could be discharged at will. In holding plaintiff's decedent an employee rather than an independent contractor, the court said:

"We are of the opinion that the test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. 26 Cyc. p. 1547.

"In our opinion there was such control over the work of Tuttle, by the company, as makes it inconsistent to say that Tuttle was an independent contractor. His work was limited by the right of the company to terminate it at any time, and it was for

no definite period or amount. The loading and unloading were under control of the company, both as to time and place. True, he was in charge of his team while going from the skidway to the mill, but that was true of all the drivers, whether working by the month or the thousand.

"The most that can be said for the respondents is that, upon the evidence in the record, it might be for a jury to say, under proper instructions, whether the company participated and directed in the work of Tuttle to such a degree that the relation of master and servant existed, or whether he was an independent contractor."

No specific factor of control appears to be conclusive as differentiating the relation of master and servant from that of independent contractor. It lies in the extent or degree of control exercised; and this is to be determined often, from the nature of the work or service to be performed, and the manner in which it is carried out. The fact that the work or service can be considered a definite entity in itself, that the task has a contour which makes it a distinct and complete operation—a whole rather than a segment, may be an indication of the nature of the relationship. The fact, also, that it can be treated as an undertaking to be carried out by another than the party to the transaction, indicates that the supervisory control is not exercised to the same degree as it would be over the party to the agreement; for it would be expected that third parties would be supervised by the original party undertaking performance, and that the same degree of control or supervision would not be exercised in carrying out the agreement, over the party undertaking to have the service performed, as it would be in case he had actually performed it himself. The status of one who employs others to do the work which he agrees to perform

recedes from the relation of servant and approaches that of a contractor. The terms of payment, whether in a lump sum or on the basis of time required, may indicate a difference between independent contract, and wages for employment. The direction of the work—whether a party could be discharged at will—whether he was subject to carry out the work at specified times—bear upon the degree of control. Gratuitous directions, suggestions, definite supervision, and the right to control, in oral contracts, are often evidenced only during performances, and the agreement and understanding between the parties as to whether the right to control extends only to the result to be accomplished and not to the methods of accomplishment, must be ascertained from the conduct, or inferences to be drawn from the conduct, of the parties. In such a case, the question is one of fact.

Authorities, relied upon to sustain the claim that plaintiff was an independent contractor, can be distinguished from this case. In *Kimberg* v. *Murray*, 233 Mich. 543, plaintiff was to furnish his own help and was not subject to control except in securing the results contracted for; in *Gross* v. *Michigan Iron & Chemical Co.*, 219 Mich. 200, plaintiff who sought to be considered an employee could have employed men to do the work which he had contracted to do, and defendant had no control over him so long as the work was done according to contract; in *Polka* v. *Lynch Timber Co.*, 227 Mich. 606, plaintiff hired whatever help he desired; in *Eberly* v. *Sanders Lumber Co.*, 282 Mich. 315, plaintiff hired men to keep three hauling trucks busy and was not required to do the work himself. All of these circumstances are strong indicia of the status of independent contractor. In *Zoltowski* v. *Ternes Coal & Lumber Co.*, 214 Mich. 231, plaintiff was engaged to unload a specific car of

lumber for a lump sum payment, and the conclusion reached therein that he was an independent contractor is not in conflict with our decision herein.

In the case before us, the department found the facts to be that defendant reserved the right to discharge plaintiff if his work was unsatisfactory, and also retained and exercised the right of supervision of the work during its performance. There is evidence to sustain such findings of fact and, accordingly, they are conclusive on this court.

Award affirmed, with costs to plaintiff.

Sharpe, Potter, Chandler, and North, JJ., concurred with McAllister, J.

Wiest, J. (*dissenting*). The award should be vacated.

Plaintiff was an independent contractor. He worked as he willed, provided his own tools, axe, sledge, wedge and saw; was master of his own time, efforts and results. The fact that he was cutting wood on an allotted strip, was informed of the size, length and method of piling and could be stopped did not constitute him an employee of defendant.

In *Kimberg v. Murray*, 233 Mich. 543, we said of a like case:

"All the elements required to constitute him an independent contractor under our former decisions are shown without any direct dispute, but were held by the commission to have been negatived by O'Neil's testimony that he 'had the right to fire' Kimberg."

Defendant had no control over the time, method or means employed by plaintiff in producing the result for which he was to be paid. Plaintiff earned as he cared to make effort.

In *Zoltowski* v. *Ternes Coal & Lumber Co.*, 214 Mich. 231, we held that right to have the result prop-

erly accomplished and to inspect did not bring the relation of master and servant. Supervision limited, as in this instance, to obtain an ultimate result did not constitute the relation of employer and employee. *Kimberg* v. *Murray, supra.* See, also, *Gross* v. *Michigan Iron & Chemical Co.,* 219 Mich. 200; *Polka* v. *Lynch Timber Co.,* 227 Mich. 606; *Eberly* v. *Sanders Lumber Co.,* 282 Mich. 315; *Zoltowski* v. *Ternes Coal & Lumber Co., supra.*

The award should be vacated, with costs to defendant.

BUSHNELL, J., concurred with WIEST, J. BUTZEL, C. J., did not sit.